**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 09-2272
_____

ALEXANDRU NICOLAIE SINDRESTEAN,

Petitioner

v.

ATTORNEY GENERAL OF THE UNITED STATES,

Respondent

_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A029-433-505)
Immigration Judge: Frederic Leeds

_____

Submitted Under Third Circuit LAR 34.1(a)
June 17, 2010
Before:  RENDELL, FISHER AND GARTH, Circuit Judges

(Opinion filed: June 18, 2010)

_____

OPINION
_____

PER CURIAM

      Petitioner Alexandru Sindrestean, a citizen of Romania, seeks review of a final

order of removal.  Sindrestean claims that he suffered past persecution, and that he fears

future persecution if removed, on account of his religious beliefs. Because the adverse credibility determination in this case is supported by substantial evidence, we will deny the petition for review.

I.

Sindrestean first entered the United States in September 1990. The next month, he filed an asylum application. The record does not reveal what became of that application, but Sindrestean returned to Romania in 1992. Sindrestean entered the United States again in 1993, and he filed his second asylum application in July 2007. Sindrestean also sought withholding of removal and protection under the Convention Against Torture. A hearing on those applications was held before an immigration judge (IJ) in Newark, New Jersey.

Sindrestean testified at the hearing that he was born in one of the villages of Baia Mare. According to Sindrestean, everyone in the village belonged to the same Orthodox Christian church. In 1984, however, Sindrestean and his parents switched their religious affiliation to a Pentecostal church in the city of Tirgu Lapus. Eventually, Pentecostal church gatherings were held at the Sindrestean home. Six months after Sindrestean's conversion, members of the village began to retaliate against him. For example, at the behest of a local priest, Sindrestean's house was vandalized. In addition, Sindrestean was called to the police station and questioned about "the reason that [he] changed Orthodoxy to Pentecostal and what [his] intentions [were]." In 1992, after Sindrestean had finished his service in the Romanian army, he was beaten by a policeman who suspected that Sindrestean would resume his observance of the Pentecostal faith.

At the close of the hearing, the IJ made an adverse credibility determination and denied Sindrestean all relief. The Board of Immigration Appeals (BIA) dismissed Sindrestean's appeal. The BIA first determined that Sindrestean had waived any challenge to the IJ's denial of his applications for withholding of removal and protection under the Convention Against Torture. The BIA next determined that the IJ's credibility determination was not clearly erroneous. The BIA concluded that "in light of the adverse credibility finding and country conditions of record . . . [Sindrestean] has not met his burden of proof for asylum." Sindrestean appealed.[1]

## II.

On appeal, Sindrestean challenges the BIA's adoption of the IJ's adverse credibility determination. Sindrestean argues that he has met his burden of proof for his asylum claim. We reject this argument, for we conclude that the adverse credibility determination in this case is supported by substantial evidence.

We agree with the IJ that "there were significant and material inconsistencies" between Sindrestean's 1990 asylum application and his testimony. For example, the 1990 application states that Sindrestean's religion was Eastern Orthodox, the very religion that

---

[1] We have jurisdiction to review a final order of removal under 8 U.S.C. § 1252(a)(1). See Abdulai v. Ashcroft, 239 F.3d 542, 547 (3d Cir. 2001). "[W]hen the BIA both adopts the findings of the IJ and discusses some of the bases for the IJ's decision, we have authority to review the decisions of both the IJ and BIA." Chen v. Ashcroft, 376 F.3d 215, 222 (3d Cir. 2004). We review an adverse credibility determination for substantial evidence and will uphold that determination "unless any reasonable adjudicator would be compelled to conclude to the contrary." Gao v. Ashcroft, 299 F.3d 266, 272 (3d Cir. 2002) (quotations omitted).

Sindrestean testified to abandoning in 1984. Leaving aside the 1990 application, though, material inconsistencies exist between Sindrestean's 2007 asylum application, his corroboratory evidence, and his testimony. As the IJ noted, the acts of vandalism done to Sindrestean's house that he described in his testimony are not mentioned in the asylum application, nor is any information about Pentecostal church services held in the house. Furthermore, the evidence presented concerning a "Eugen Cosma" is inconsistent at best: Sindrestean submitted an affidavit from Cosma stating that he was with Sindrestean when they were stopped by police in 1992, yet Sindrestean testified that he was by himself during that incident.[2] Faced with these facts, it was reasonable for the IJ to conclude that Sindrestean lacked credibility.

The IJ's adverse credibility determination is fatal to Sindrestean's request for asylum, see Dia v. Ashcroft, 353 F.3d 228, 247 (3d Cir. 2003) (en banc), and we will therefore deny his petition for review.

---

[2] Sindrestean also testified that Cosma was actually one of the police officers that brought him in for questioning in the 1980s. Perhaps that was a different "Eugen Cosma," but without sufficient explanation, that testimony is not easily reconciled with the following line from the Cosma affidavit: "I met [Sindrestean] in June 1992 at the Pentecostal Church . . .."